UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARLA FLORES ARAUJO,<br><br>Petitioner,<br><br>v.<br><br>ICE FIELD OFFICE DIRECTOR et al.,<br><br>Respondents. | CASE NO. 2:26-cv-01008-LK<br><br>ORDER DENYING PETITION FOR HABEAS CORPUS |

This matter comes before the Court on Petitioner Marla Flores Araujo's Amended Petition for Writ of Habeas Corpus. Dkt. No. 14. For the reasons stated below, the Court denies the amended petition.[1]

## I. BACKGROUND

Flores Araujo is a "native and citizen of Mexico[.]" Dkt. No. 6 at 2. She became a Lawful Permanent Resident of the United States on July 29, 2008. *Id.* On March 18, 2025, she was convicted of the offense Transportation of Illegal Aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii) in the United States District Court for the District of Arizona. *Id.* She was sentenced to 8 months in federal prison followed by 24 months of supervised

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

release. *Id.* She was released from the Bureau of Prisons and into Immigrations & Customs Enforcement ("ICE") custody on October 15, 2025, and transferred to the Northwest ICE Processing Center ("NWIPC") the next day. *Id.*; *see also* Dkt. No. 7-3 (Department of Homeland Security Warrant for Arrest issued October 14, 2025).

On October 16, 2025, ICE Enforcement and Removal Operations ("ERO") served Flores Araujo with a Notice to Appear ("NTA") charging her as removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") based on her conviction for an aggravated felony as defined in section 101(a)(43)(N) of the INA. Dkt. No. 7-1 at 2. On March 9, 2026, an Immigration Judge ("IJ") ordered Flores Araujo removed to Mexico. Dkt. No. 7-4 at 4. The Board of Immigration Appeals ("BIA") dismissed Flores Araujo's appeal of that order on July 24, 2026. Dkt. No. 15-1.

Flores Araujo filed her habeas petition on March 23, 2026. Dkt. No. 1. Respondents filed a return, Dkt. No. 5, and Flores Araujo filed a traverse, Dkt. No. 9. On May 11, 2026, the Court ordered Flores Araujo to show cause why the matter should not be dismissed for lack of subject matter jurisdiction because her "current custodian, the warden of the NWIPC, [wa]s not named as a respondent." Dkt. No. 10 at 1. The order required Flores Araujo to explain "why her current petition should not be dismissed without prejudice for failing to name a proper respondent or, in the alternative, file an amended petition that adds the warden as a respondent." *Id.* at 2. Flores Araujo mailed back the Court's order with Bruce Scott's name added in the Respondent section of the caption. Dkt. No. 11 at 1. That document was not an amended petition, nor was it signed by Flores Araujo. *See generally id.* Accordingly, the Court again ordered her to show cause why her petition should not be dismissed for lack of jurisdiction. Dkt. No. 12 at 2.

Flores Araujo subsequently filed an amended petition naming Bruce Scott as "Northwest Detention Center Warden" as a Respondent. Dkt. No. 14 at 1.[2] Although the Court permitted Respondents[3] to file an amended return to the amended petition, they did not do so.

## II. DISCUSSION

Flores Araujo avers that she has been "[d]etained for more than 180 days" and has a "case pending with the BIA." Dkt. No. 14 at 3. She requests that the Court "review [her] case" and give [her] the opportunity to fight [her] case outside of detention" so she can be with her family, including her four U.S. citizen children. *Id.* Respondents argue that the petition should be denied because Flores Araujo is mandatorily detained, and her "continued detention does not violate the Fifth Amendment's Due Process Clause." Dkt. No. 5 at 1–2.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

[2] Because Flores Araujo filed an amended petition that named her custodian as a respondent, the Court discharges its second order to show cause. Dkt. No. 12. Flores Araujo also filed an application to proceed in forma pauperis with her amended petition, Dkt. No. 14-1, but that application is moot because she already paid the filing fee, Dkt. No. 1.

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). The Supreme Court has held that federal courts have jurisdiction to review a constitutional challenge to a noncitizen's detention under § 1226(c). *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Demore*, 538 U.S. at 523 (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Flores Araujo Is Not Entitled to Habeas Relief**

1. <u>Section 1226(c) Mandates Detention</u>

Respondents aver that Flores Araujo "is lawfully detained at the [NWIPC] pursuant to 8 U.S.C. § 1226(c) because she was convicted of an aggravated felony." Dkt. No. 5 at 1. According to Respondents, "Petitioner's detention is mandatory during removal proceedings, which remain ongoing following an Immigration Judge's order of removal on March 9, 2026, and Petitioner's timely appeal[.]" *Id.* Respondents assert that "Petitioner's removal order is not yet administratively final," so her detention is governed by 8 U.S.C. § 1226(c). *Id.* at 4.

Flores Araujo disagrees, arguing that "mandatory detention under 8 U.S.C. §1226(c) no longer applies" to her because an IJ "ordered [her] removed to Mexico." Dkt. No. 9 at 1. Accordingly, Flores Araujo claims entitlement "to release from detention as [her] detention has

surpassed 180 days as of 4/16/2026," and "keeping [her] unlawfully detained" during BIA proceedings "directly violates [her] Fifth Amendment rights." *Id.* In sum, she argues that "[t]he respondents continued claim that [her] detention is mandatory due to removal not being final is in direct contradiction of the 'order of final removal' issued to [her] on Mar[ch] 9[,] 2026." *Id.* at 2.

Although Flores Araujo asserts that her removal order is final, it is only administratively final at this point. 8 U.S.C. § 1101(a)(47)(B); 8 CFR § 1241.1(a). She has 30 days from July 24, 2026 to seek review with the appropriate court of appeals. Dkt. No. 15-1 at 2. On the later of (1) the date her order or removal becomes administratively final or (2) the date of the circuit court of appeals' final order, if the removal order is judicially reviewed, the "removal period" will begin and Flores Araujo's detention will be governed by 8 U.S.C. § 1231(a). 8 U.S.C. § 1231(a)(1)(B)(i)–(ii). Even if her detention were currently governed by Section 1231(a), detention would be presumptively reasonable for six months from the date her detention shifted to that section. *Zadvydas*, 533 U.S. at 699. However, Flores Araujo's detention is currently governed by Section 1226(c).

Section 1226 of title 8 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

Under Section 1226(c), however, noncitizens who have committed certain listed offenses or who have been identified by the government as involved in terrorist activities are subject to

mandatory detention. 8 U.S.C. § 1226(c)(1)(A)–(E).[4] The Supreme Court's decisions in *Demore* and *Jennings* addressed the meaning of Section 1226(c) as it relates to bond hearings.

In *Demore*, a noncitizen who had been a lawful permanent resident for 10 years (Kim) was detained under Section 1226(c) after he was convicted of first-degree burglary and "petty theft with priors" in California. 538 U.S. at 513. The Immigration and Naturalization Service ("INS") charged him with being deportable from the United States in light of these convictions, and detained him pending his removal hearing. *Id.* After roughly six months of detention, Kim filed a habeas corpus action arguing that his detention "violated due process because the INS had made no determination that he posed either a danger to society or a flight risk." *Id.* at 513–14. The Supreme Court reversed lower court decisions holding that Kim was entitled to a bond hearing, emphasizing that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz,* 426 U.S. 67, 79–80 (1976)). It held that Congress—"justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings"—"may require that persons such as [Kim] be detained for the brief period necessary for their removal proceedings." *Id.* at 513; *see also id.* at 528 ("[I]n adopting § 1226(c), Congress had before it evidence suggesting that permitting discretionary release of [noncitizens] pending their removal hearings would lead to large numbers of deportable criminal [noncitizens] skipping their hearings and remaining at large in the United States unlawfully."). In response to a dissent "suggesti[ng] that [noncitizens] are entitled to an immediate hearing," the Court pointed to its holding in *Zadvydas*, which "permit[ed] [noncitizens] to be detained for several months prior to such a hearing." *Id.* at 529 n.11.

[4] Section 1226(c) was amended on January 29, 2025, but those amendments are irrelevant to this case. *See* 139 Stat. 3 (2025).

The Supreme Court's decision in *Jennings* expanded upon the Court's analysis of Section 1226(c). *Jennings* involved a class of noncitizens who were detained under Sections 1225(b), 1226(a), or 1226(c) pending completion of removal proceedings and who had been detained more than six months without a bond hearing. 583 U.S. at 290. The Ninth Circuit "construed §§ 1225(b) and 1226(c) as imposing an implicit 6-month time limit on a[ noncitizen]'s detention under these sections," and held that a noncitizen "must be given a bond hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." *Id.* at 291–92. The Supreme Court reversed, holding that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable proceedings," and that there was no justification for any of the procedural requirements that the Ninth Circuit imposed "without any arguable statutory foundation." *Id.* at 296–97. With respect to Section 1226(c) in particular, the Court emphasized that "by allowing [noncitizens] to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that [noncitizens] detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute"—and the statutory text made clear that detention "*must* continue 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Id.* at 303 (quoting 8 U.S.C. § 1226(a)); *see also id.* at 304 ("By expressly stating that the covered [noncitizens] may be released 'only if' certain conditions are met, . . . the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained [noncitizens] under any other conditions.").

Accordingly, noncitizens detained under Section 1226(c) are not statutorily eligible for release on bond. *See Avilez v. Garland*, 69 F.4th 525, 535–36 (9th Cir. 2023) (explaining that "noncitizens subject to mandatory detention under Subsection C are not statutorily eligible for

release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by § 1226(c)(2).”). The Court therefore focuses on Flores Araujo’s due process challenge to her detention.

2. Continued Detention Does Not Violate Flores Araujo’s Due Process Rights

Even if a petitioner’s continued detention is statutorily permitted under 8 U.S.C. § 1226(c), the detention must also comport with due process. *See Gomez v. ICE Field Off. Dir.*, No. 2:25-cv-02242-TL-TLF, 2026 WL 449536, at *3 (W.D. Wash. Jan. 27. 2026), *report and recommendation adopted*, 2026 WL 447409 (W.D. Wash. Feb. 17, 2026).

In asking to “fight [her] case outside of detention,” Dkt. No. 14 at 3, Flores Araujo is requesting release, but the Court cannot grant that relief. “There is no authority supporting petitioner’s claim that [s]he is entitled to an order of release” from this Court when the statute mandates her detention. *Martinez v. Clark*, No. 2:18-cv-1669-RAJ-MAT, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019) (explaining that if a due process violation is found with respect to a noncitizen detained under Section 1226(c), “the proper remedy is a bond hearing”), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019); *see also Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL, 2024 WL 1676681, at *1 (W.D. Wash. Apr. 18, 2024) (same). The Court thus focuses on whether due process requires a bond hearing under these circumstances.

The Ninth Circuit has declined to rule on whether due process requires a bond hearing for a noncitizen detained under § 1226(c). *Avilez*, 69 F.4th at 538. However, it has observed that after the Supreme Court’s decision in *Jennings*, “it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute.” *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022). The circuit courts that have addressed the issue post-*Jennings* are split.

In 2021, the First Circuit rejected the contention that "all persons detained under section 1226(c) have a constitutional right to a hearing concerning the reasonableness of their continued detention after they have been detained longer than six months," but acknowledged "that the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention under section 1226(c)." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (citation modified). Similarly, in *German Santos v. Warden Pike County Correctional Facility*, the Third Circuit "explicitly declined to adopt a presumption of reasonableness or unreasonableness of any duration," instead imposing a "highly fact-specific inquiry" that considers "the duration of detention" along with "all the other circumstances," "whether the detention is likely to continue," "the reasons for the delay, such as a detainee's request for continuances," and "whether the [noncitizen's] conditions of confinement are meaningfully different from criminal punishment." 965 F.3d 203, 210–11 (3d Cir. 2020) (citation modified). And in *Black v. Decker*, the Second Circuit joined the First and Third Circuits "in rejecting a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." 103 F.4th 133, 150 (2d Cir. 2024). Instead, the court held that due process challenges to prolonged detention under section 1226(c) should be reviewed under the *Mathews v. Eldridge* framework, as it is a "flexible test" that "takes account of individual circumstances" and "comports with the Supreme Court's guidance in *Jennings* that 'due process is flexible,' . . . and . . . 'calls for such procedural protections as the particular situation demands.'" *Id.* at 148 (quoting *Jennings*, 583 U.S. at 314 (other citations and quotation marks omitted)).

In contrast, the Eighth Circuit held that Supreme Court precedent "leave[s] no room for a multi-factor "reasonableness' test." *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024). In its view, "*Zadvydas* and *Demore* have already done whatever balancing is necessary," permitting the

detention of a noncitizen "for as long as deportation proceedings are still '*pending*.'" *Id.* (quoting *Demore*, 538 U.S. at 527 and quoting with approval *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) for the proposition that a noncitizen detained under Section 1226(c) "has the keys in his pocket" and can "end[] his detention immediately" by "withdraw[ing] his defense . . . and return[ing] to his native land").

This Court joins the First, Second, and Third Circuits in rejecting a bright-line rule in this context. Consistent with the Ninth Circuit's expression of "grave doubt[] that any statute that allows for arbitrary prolonged detention without any process is constitutional," *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018), though, the Court also rejects the proposition that detention is permissible, no matter how prolonged, for as long as deportation proceedings are still pending. Courts in this District apply an individualized test to determine whether a noncitizen's prolonged mandatory detention under 1226(c) without a bond hearing violates due process. *Herrera v. Mayorkas*, No. C24-1933-JNW-MLP, 2025 WL 2382093, at *5 (W.D. Wash. May 19, 2025), *report and recommendation adopted*, 2025 WL 2380669 (W.D. Wash. Aug. 15, 2025) (citing *Martinez*, 2019 WL 5968089, at *8–9 n.8). In particular, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Martinez*, 2019 WL 5968089, at *7. Respondents apply the *Martinez* test. Dkt. No. 5 at 6–7, while Flores Araujo's traverse and amended petition are silent on that issue, *see generally* Dkt. Nos. 9, 14.

The first factor "is the most important one." *Ashemuke v. ICE Field Office Dir.*, No. 2:23-cv-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024). Flores Araujo argues that she is entitled to relief because she has been detained since October 16, 2025. Dkt. No. 14 at 3. Respondents argue that "the total length of detention is short and consistent with the period *Demore* described as reasonable, even with a BIA appeal." Dkt. No. 5 at 7. The Court finds insensitive at best Respondents' characterization of Flores Araujo's nine-month detention, away from her family, as "short." The Court finds that this factor weighs in Flores Araujo's favor at this point. *See, e.g.*, *Portales v. Immigr. & Customs Enf't Field Off. Dir.*, No. C26-817-RSM, 2026 WL 1948056, at *2 (W.D. Wash. July 6, 2026) (finding that detention of over eight months favored petitioner); *Ashemuke*, 2024 WL 1683797, at *4 ("The longer mandatory detention continues beyond the 'brief' period authorized in *Demore*, the harder it is to justify."); *but see Rashad v. LaRose*, No: 3:26-cv-1750-CAB-VET, 2026 WL 962660, at *1 (S.D. Cal. Apr. 9, 2026) (finding that the length of detention factor "weighs heavily against Petitioner given that he has been detained for approximately nine months"); *Sibomana v. LaRose*, No. 22-CV-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023) (noting that courts "become extremely wary of permitting continued custody absent a bond hearing" when "detention continues past a year").

Regarding the second factor—how long detention is likely to continue absent judicial intervention—Flores Araujo argues that her appeal "could take up to 6 [months.]" Dkt. No. 9 at 1. However, after briefing was complete, the BIA dismissed Flores Araujo's appeal. Dkt. No. 15-1. Flores Araujo has not stated whether she will further appeal that decision, so this factor is neutral. *Hossain v. Scott*, No. 2:26-cv-00923-LK, 2026 WL 1533003, at *5 (W.D. Wash. June 1, 2026) (finding this factor neutral based on an underdeveloped record).

The third factor—whether the detention will exceed the time the petitioner spent in prison for the crime that made her removable—weighs in Flores Araujo's favor because the nine months she has spent in detention exceeds her eight-month prison term. Dkt. No. 5 at 7.

The fourth factor—the nature of the crimes the petitioner committed—is "indicative of whether the detainee would be a danger to the community or a risk of flight such that a bond hearing would be futile." *Odimara*, 2024 WL 3862256, at *7. This factor favors detention because as Respondents argue, Flores Araujo was convicted of a felony serious that was "directly related to immigration violations." Dkt. No. 5 at 7.

The fifth factor examines the conditions of detention. Flores Araujo's filings do not address the conditions at the NWIPC, Dkt. Nos. 9, 14, so this factor is neutral. Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. These factors are neutral because as Respondents note, Dkt. No. 5 at 7, neither party alleges delays attributable to either party.

Finally, to evaluate the eighth factor—the likelihood that the removal proceedings will result in a final order of removal—the Court "considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10. The BIA has dismissed Flores Araujo's appeal, and it is unclear whether she will seek further review at this juncture. On this thin record, the Court does not have sufficient information to determine whether her arguments before a circuit court of appeals will have merit or whether she ultimately will prevail. Consequently, this factor is neutral.

In sum, the Court finds that the first and third factors weigh in Flores Araujo's favor. The rest of the factors are either neutral or weigh in the government's favor. On this record, the Court does not find that Flores Araujo's "continued mandatory detention under § 1226(c) has become

unreasonable and in violation of due process." *Martinez*, 2019 WL 5968089, at *11. Consequently, the Court does not order the government to provide a bond hearing at this time. If continued detention becomes unreasonably prolonged or indefinite, Flores Araujo may file another habeas petition at that time. Now, though, she is not entitled to habeas relief.

## III. CONCLUSION

For the foregoing reasons, the Court denies Flores Araujo's amended habeas petition. Dkt. No. 14.

Dated this 7th day of August, 2026.

Lauren King
United States District Judge